testified in support of the charges that her parents smoked marijuana sometimes, but not all the time. She described them as not getting "really real high where they acted real crazy, and that they usually acted normal." She testified further that on two or three occasions, her parents asked her if she wanted to try a marijuana cigarette, that she said yes, and that she was then permitted to do so. On the first occasion, she took only one puff, and on the later occasions, more than one. She stated that she did not notice anything happening to her after puffing the cigarette. There was no evidence presented that the active ingredient in marijuana is addictive or harmful to the health. Indeed, the welfare worker implied that it was not and that the danger to children from living where there is heavy addictive drug usage stems from the addiction of the parent and its consequent placing of self-interest over the interest of the dependent.

The daughter also testified that she saw her father inject himself once or twice with something white and that her mother said it was speed. He usually made her leave the room when getting ready to use the syringe. She saw her mother inject herself once at a friend's house while they were visiting to celebrate Thanksgiving. The daughter was never given any of the white substance and did not use the needles. There was actually insufficient evidence that the substance being injected by appellant and his wife was a narcotic drug or even a controlled stimulant, or that either of the parents was addicted. The father worked part-time as a house painter and the mother worked full-time in a barbecue restaurant. There was no evidence that either parent failed to provide the daughter with food, clothing, or shelter, or mistreated her in any way. There was no evidence that the parents' use of marijuana and needles brought the child into contact with violence or danger from non-family members using or trafficking in drugs. There was insufficient evidence that the use by the parents of marijuana, their injection of white material they called speed, and the experimentation by the daughter on two or three occasions was such as to create an actual and appreciable danger to the child's life or health as is essential to both Counts I and II. *State v. Downey* (1985), Ind., 476 N.E.2d 121.

I read the provision of the criminal statute pursuant to which these charges were brought as having as its goal the protection of the physical well-being of dependents and not their moral well-being. If there is a crime here by the parents, it was encouraging their daughter, a minor, to commit an act of delinquency in violation of I.C. 35–46–1–8. Because the State's proof is lacking, these convictions for endangering physical well-being should be reversed.

SHEPARD, C.J., joins as to Count I. I would affirm Count II.

**T.M., Appellant,**

v.

**D.T., Appellee.**

**No. 02A03–8903–JV–103.**

Supreme Court of Indiana.

Dec. 15, 1989.

T.M., Brooklyn, Neb., pro se.

James M. More, Fort Wayne, for appellee.

PER CURIAM.

Appellant, T.M., seeks transfer to reinstate his appeal which the Court of Appeals treated as untimely. We grant transfer and remand this cause to the Court of Appeals for disposition on the merits.

This appeal arose from an order modifying T.M.'s child support obligations. T.M. is an attorney living in Brooklyn, N.Y., who has represented himself on appeal. He timely filed his motion to correct errors on November 21, 1988. The trial court denied the motion on February 6, 1989. T.M. timely filed his praecipe on March 3, 1989.

On May 24, 1989, T.M. filed a "Motion for Extension of Time" which alleged that the Record of Proceedings had been due May 8. The motion alleged that various delays, including some over which he had no control, had prevented T.M. from filing the record by May 8. The motion asked that T.M. be allowed to file the record on or before June 1, 1989.

The Court of Appeals denied the motion on May 30. T.M. tendered the record for filing on June 1. The Court of Appeals treated the record as untimely and refused to accept it for filing. The Court of Appeals also denied T.M.'s petition for rehearing which alleged that T.M.'s delay in tendering the record was excusable.

In his petition to transfer, T.M. asks this Court to reinstate his appeal because the filing of his record of proceedings on June 1 would have been timely under the February 16 amendments to the Indiana Rules of Appellate Procedure. He concedes that he heretofore has not relied on the February 16 amendments. However, he contends such conduct was justifiable because a copy of those amendments allegedly was not available to him in New York until after he filed his petition for rehearing.

■ This Court finds that T.M. did tender his record on a timely basis under the February 16 amendments, although the record would have been untimely under the rules as they existed before those amendments. On February 16, this Court amended Appellate Rule 3(B) to read in relevant part:

(B) Time Within Which the Appeal Must Be Submitted

In all appeals and reviews, except those from interlocutory orders, the record of the proceedings must be filed with the clerk of the Supreme Court and Court of Appeals within ninety (90) days from the date the praecipe is filed.

T.M. filed his record on June 1, 90 days after the March 3 filing of his praecipe.

■ While T.M.'s compliance with the jurisdictional deadlines was inadvertent, it was nonetheless effective. A case on appeal should be considered on the merits whenever possible. *State v. Heslar* (1972), 257 Ind. 625, 277 N.E.2d 796.

This cause is remanded to the Court of Appeals for briefing and disposition on the merits.

Terry **SHEPHERD**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 71S00–8805–CR–472.

Supreme Court of Indiana.

Dec. 18, 1989.